IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.  1:17-cr-00432-PAB

UNITED STATES OF AMERICA,

     Plaintiff,

V.

MICHELLE MEDINA,

     Defendant.

---

**DEFENDANT MICHELLE MEDINA'S SENTENCING
MEMORANDUM AND MOTION FOR A VARIANT SENTENCE**

---

Defendant Michelle Medina entered a plea of guilty to Court 1 of the Criminal Information, charging a violation of 26 U.S.C. §7201, Tax Evasion for the year 2008.   Ms. Medina, through undersigned counsel, Amanda B. Cruser, respectfully moves this Court to impose a sentence of home confinement which would require a variance from the sentencing guidelines.

### *Factual Background*

Ms. Medina is 51 years old.  She was born in Denver and raised in the San Luis Valley of Colorado.  She has two brothers who reside in South Fork, Colorado, Joseph Medina and Manuel Medina.  Her parents divorced when she was in her twenties.  She has had a good relationship with both of her parents, but was especially close to her mother Edna Medina, who passed in 2007.

1

Ms. Medina has been married to Guillermo Garcia since 1998.  They have four children together including Celena Garcia, age 18; twins Brandon Garcia and Bethany Garcia who are age 15; and Cheyenne Garcia, age 14.  All four children are currently living with Ms. Medina.  Ms. Medina and Mr. Garcia began experiencing marital difficulties beginning in the fall of 2016 when Ms. Medina learned that her husband had been having an extramarital affair.  He continued to be involved with the family despite the marital issues up until November 15, 2017.  On that date, he drove Ms Medina to the federal courthouse in order for her to make an initial appearance; he drove her home, dropped her off and left.  He essentially disappeared from their lives; he stopped communicating with them and he didn't respond to calls or texts from Ms. Medina or her children.  Initially, they heard from other relatives that he went to Mexico and took his girlfriend.  Even after he came back, he did not reach out to Ms. Medina or communicate with his children.

The four children have not seen their father in months.  They saw him for a few minutes several months ago when they went looking for him.  They found him at his girlfriend's house and he asked them to leave.  Ms. Medina's oldest child has tried to reach out to him on other occasions and has observed him drinking heavily when he previously never consumed alcohol.  He has not bothered to contact his children on their birthdays or on holidays and has provided little to no financial support to his family since last fall.  Ms. Medina has been extremely worried about all four children and their mental conditions given the stress of her guilty plea in this case and the fact that their father has abandoned them.  All four kids have sought counseling, either professionally or through school or church counselors.

Ms. Medina began working for her mother Edna who was operating a home health care business.  Ms. Medina was the director of nurses took care of the patient side of the business

which included assessing new clients, scheduling appointments, supervising staff, and providing care to some of the clients herself.  She was in charge of 4 nurses and more than a dozen certified nursing assistants.  Her mother handled the business side of things, she had an office manager and she had hired a payroll company to handle payroll and employment taxes.

Edna Medina found out she had breast cancer in the latter part of 2005.  She had a mastectomy and then shortly thereafter discovered that she also had a tumor in her lung.  The defendant, Ms. Medina spent most of 2006 and the beginning of 2007, caring for her mother and taking her to doctor's appointments while trying to work for the company and raise four young kids of her own.  Her mother's health started to decline in January 2007 and she passed shortly thereafter.  Prior to her death, she never officially signed the business over to her daughter.

Ms. Medina was overwhelmed with the responsibility of running the company while she was grieving her mother's death and raising her own children.  She continued to use the payroll company and all employment taxes were filed timely and employment taxes were paid in full. She continued to pay herself a wage through the payroll company and she filed personal tax returns claiming the money reported to her on the W-2 forms.  She failed to file corporate tax returns and she failed to account for the money that she and her husband spent directly out of the corporate bank accounts.  She deeply regrets this and recognizes that she should have either taken responsibility for the accounting herself or sought the assistance of a professional bookkeeper or CPA during that period to keep the books in order and to be sure that everything was accounted for properly.

Ms. Medina was raised going to church, although her father's family was Catholic and her mother's family was Protestant and she would tell you that most of the strife in their household was over religion.  Ms. Medina and her family attended Elmwood Baptist Church in

3

Brighton, CO from 2005 – 2016.  Ms. Medina and her husband decided to go into the ministry and they received bible certificates from the Faith Bible Institute.  Mr. Garcia believed that he was called to be a pastor and that he wanted to start a church in Mexico for the less fortunate. Ms. Medina supported him in that decision and in January of 2014, he was ordained as a pastor. In August of 2014 they sold their home and they began taking mission trips to Mexico to start a church for the less fortunate.   Mr. Garcia told Ms. Medina that he was setting aside half of the proceeds from the sale of the home, around $580K, to pay the IRS whenever they figured out how much they owed.  Mr. Garcia has since claimed that all of that money is gone and Ms. Medina was surprised to learn from the government that Mr. Garcia transferred much of that money to Mexico.

On their missions, they lived surrounded by the people that they were trying to help. They were bathing by carrying buckets of water back to the place they were renting, they paid rent of $80 per month and they washed their clothes by hand.  They spent most of their time from the latter part of 2014 through early 2016 in Mexico, coming back to the United States off and on.  They returned for good in the summer of 2016 after Mr. Garcia told the family that he felt that it was too dangerous for them to stay in Mexico.  He left his family there so that he could return to Denver and find a place for them to live.  They got to Denver about a week later and Ms. Medina started to suspect that he was having an affair and that it had likely started prior to the most recent trip to Mexico.  After they returned, the family stopped attending the Elmwood Baptist Church.  Ms. Medina attributes that to the fact that Mr. Garcia had become a pastor and could not face going to that church when he had been cheating on her.

After leaving Elmwood, she and her kids looked for a new church.  They ultimately decided to join the Greeley Baptist Temple.  They have been attending the Greeley Baptist

Temple for the past two years.  They attend church twice a week and then participate in extra activities.  The kids are very active in the youth programs.

Ms. Medina hired a manager to operate the business until August 31, 2017.  The business was officially dissolved through the Colorado Secretary of State's office on October 19, 2017.  She has been working for VASA, a skilled nursing facility providing hands on nursing care since January of 2018.

### *IRS Audit and Investigation*

This case was initiated by the IRS in the form of a civil audit of Ms. Medina's personal tax returns in 2011.  At that time, no corporate tax returns had been filed and the personal returns only included Ms. Medina's wages, not the additional money that she and her husband spent for personal use out of the corporate bank accounts.  The business earned income from Medicaid and private insurance carriers, and there has been any allegation that either was billed improperly.  This case is strictly about Ms. Medina's failure to include all of her income on her tax returns and for using the corporate bank accounts as her own.  The IRS auditor referred the case to the Criminal Investigation Division where the case was investigated for nearly five years.  During that period Ms. Medina retained a number of different tax advisors and had been advised not to file the corporate tax returns while the criminal investigation was pending.  She worked with tax advisors to create books for the company, since she had not been keeping books at the time.  She had to obtain records from the bank because along the way, business records that were stored in her barn were damaged due to heavy rains and flooding.  Thus, she had corporate returns prepared that were never filed.

She retained undersigned counsel early in 2017, and she began making regular payments

to the Internal Revenue Service for the past taxes.  Some of those payments were refunded by the IRS due to the fact that during the pendency of the criminal investigation, the civil side of the IRS did not recognize that any amounts were owed and thus it viewed many of those payments as overpayments and refunded the amounts that were sent.  See attached Exhibit A in which the IRS is still attempting to return a small payment that was made for the 2009 tax year.  Attempts to determine the status of Ms. Medina's filings was difficult because the IRS's official account transcripts are riddled with errors and do not reflect the amounts that the IRS criminal investigation has determined are owed.  Prior to seeking advice from undersigned counsel, Ms. Medina was under the false impression that the IRS would at some point contact her and tell her what was owed and that she would be able to pay the tax at that time.

During the summer of 2017, undersigned counsel met with US DOJ Tax Attorneys to discuss the case and work out a resolution.  Those communications resulted in Ms. Medina agreeing to waive indictment and agreeing to enter into a one count plea agreement.  Given Ms. Medina's acceptance of responsibility, the government did not have to seek an indictment in this case and they did not have to prepare for trial in this case.  While she and her husband were affiliated with the business, she was responsible as she took over running the company after her mother passed.

**Sentencing Procedures**

Pursuant to Gall v. United States, 552 U.S. 38, 128 S.Ct. 586 (2007),

> A district court should begin by correctly calculating the applicable Guidelines range. The Guidelines are the starting point and initial benchmark but are not the only consideration.   After permitting both parties to argue for a particular sentence, the judge should consider all of 18 U.S.C. § 3553(a)'s factors to determine whether they support either party's proposal. He may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented. If he decides on an

outside-the-Guidelines sentence, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variation. He must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

Ms. Medina objects to any presumption that the Sentencing Guidelines here are reasonable. The Court should not apply the otherwise applicable Sentencing Guidelines created pursuant to 18 U.S.C. § 3553 because the guidelines are merely advisory in the context of "other statutory concerns." United States v. Booker, 543 U.S. 220, 245 (2005). Section 3553(a) lists seven factors to be considered in imposing a sentence. Those factors are as follows:

1.      **Nature and Circumstances of Ms. Medina's Offense**

Ms. Medina knowingly underreported her income on her individual income tax returns and failed to file corporate tax returns. After she took over the company after her mother's passing, she began utilizing the corporate bank accounts as if they were her own personal bank accounts. She recognizes the seriousness of this offense and the obligation that all of us have to correctly report our earnings to the Internal Revenue Service. The Internal Revenue Service was the victim in this case, there were no other victims of this offense.

2.      **Personal History and Characteristics of Ms. Medina**

Ms. Medina has been a licensed register nurse for almost 28 years. She has dedicated her life to helping others through her occupation and through her volunteer and mission efforts through her church as discussed under the factual background. She has never been in trouble with the law and she has no alcohol or substance abuse problems. She is 51 years old with four teenage children that she is currently raising entirely on her own. If she loses her registered nursing license she will likely need other vocational training in order to pursue an alternative career. She has been suffering from depression and would benefit from mental health treatment.

If she is incarcerated, she will lose her home and will have no where to return to when released from prison.

In many tax cases, the defendant's history and characteristics include an extensive record of good works and their charitable endeavors may be considered during sentencing.   Judge Jed Rakoff noted in <u>United States v. Adelson</u> , "if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance."  <u>United States v. Adelson</u>, 441 F.Supp.2d 506, 513-514 (S.D.N.Y. 2006).


3.      **The need for the sentence to reflect the seriousness of the crime, promote respect for the law and provide just punishment**

In imposing a sentence that is "sufficient but not greater than necessary" the Court need to consider whether the sentence reflects the seriousness of the crime, promotes respect for the law, and provides just punishment.  Given Ms. Medina's individual circumstances, a sentence of home confinement would adequately accomplish these sentencing objectives.  Ms. Medina was a law abiding citizen until she began to commit the crime to which she has pled guilty.  She has no prior criminal history and her only contact with law enforcement has been in connection with this case.  Any amount of incarceration will be punitive and difficult given that Ms. Medina has never spent any time in prison.  Ms. Medina has a significant amount of restitution to pay and must cooperate with the IRS to resolve all other outstanding tax issues.  The humiliation of entering a plea of guilty to a felony, combined with the threat of losing her nursing license, and the loss of personal freedom that results from a sentence of home confinement and probation promote respect for the law and would provide just punishment.

4.      **The need for the sentence to afford adequate deterrence from further criminal conduct**

Given the stress that this case has brought to Ms. Medina since the case was referred to the criminal investigation division, Ms. Medina has already been sufficiently deterred from any committing any further criminal offenses. She deeply regrets what she did and the impact that her actions have had on her family. The humiliation that she has endured since she entered her plea in this case, coupled with the fear of not knowing what will happen to her children and the sadness she feels over the possibility of losing her nursing license have truly been all that was needed to deter her from every committing another crime. She will also have to live extremely modestly from here forward given the restitution owed and the additional amounts she will owe to the IRS.

The concern that the imposition of a below-guidelines sentence in a tax case will have a negative impact on overall enforcement is predicated on the assumption that any would-be offender, when weighing the risks and rewards associated with evading his taxes, would be willing to accept a criminal prosecution and conviction if the chances of a long period of incarceration were low. Deterrence can be achieved through other penalties. Thus, the threat of prosecution and conviction coupled with social and professional consequences and the feelings of shame and humiliation, not to mention often severe financial penalties surely weigh more heavily in the calculations of any would-be offenders than the promise of a below-guidelines sentence after conviction.

5.      **The need to protect the public from further crimes**

Given that this is a tax offense and that Ms. Medina did not commit a crime against the

public, there is no need to protect the public from further crimes.

6.       **The need to avoid unwarranted sentencing disparities**

The United States Sentencing Commission publishes a Quarterly Data report that has established that defendants charged with tax offenses are more likely to receive a downward variance than both defendants generally and defendants charged with fraud.  For Fiscal Year 2017, there were 433 offenders charged with tax offenses.  Of those offenders, the median sentence was 10 months and the mean sentence was 13 months.  Of those sentenced for tax offenses, only 24.9 percent of offenders were sentenced within the guideline range, while 48.8 percent of tax offenders were sentenced to a "Non-Gov't Sponsored Below Range".  (See Table 10 of the U.S. Sentencing Commission, 2017 Datafile, USSCFY17.  A total of 1.6 percent of offenders were sentenced above the guideline range and the rest (approximately 24%) were sentenced below the guideline range for government sponsored purposes including a §5K1.1 and 5K3.1 departures.  Thus, it is not uncommon for the Courts to find justification to support a non-guideline sentence in tax offenses.

7.       **The need to provide restitution to the victims of the offense**

Ms. Medina has stipulated to a tax loss and restitution amount of $841,327.  She will also have to work with the IRS to resolve all outstanding tax issues and will be assessed statutory penalties on the taxes that are owed.  It is likely that she will lose her registered nurse license and will have to find alternative employment and her income will likely be significantly reduced.  If she is incarcerated, it will take her significantly longer to be able to repay the restitution.

"It is important to realize that departures are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some aspects, the rigidity of the Guidelines themselves. District judges, therefore, need not shrink from utilizing departures when

10

the opportunity presents itself and when circumstances require such action to bring about a fair and reasonable sentence." United States v. Gaskill, 991 F.2d 82, 86 (3rd Cir. 1993).

### *Acceptance of Responsibility*

Ms. Medina has fully accepted responsibility in this case by agreeing to enter into a one count plea agreement prior to indictment of the case.  The government did not have to seek an indictment and they did not have to prepare for trial in this case.  She has also accepted responsibility by submitting a letter to the nursing board to alert them that she has entered a plea in this case.  She is hopeful that she will be able to retain her nursing license, but she fears that it will be revoked and even if it is not revoked that she will have difficulty finding a job as a convicted felon in the nursing industry.

### *Family Ties and Responsibilities § 5H1.6*

U.S.S.G. § 5H1.6 recognizes that in some cases, albeit not in "ordinary" cases, a court may downward depart as a result of a defendant's family responsibilities as well. See, e.g., United States v. Canoy, 38 F.3d 893, 903-08 (7th Cir. 1994); United States v. Haversat, 22 F.3d 790, 797 (8th Cir. 1994), cert. denied, 116 S.Ct. 671 (1995); United States v. Parham, 16 F.3d 844 (8th Cir. 1994); United States v. Sclamo, 997 F.2d 970, 973-74 (1st Cir. 1993); United States v. Rivera, 994 F.2d 942 (1st Cir. 1993); United States v. Gaskill, 991 F.2d at 83-86; United States v. Johnson, 964 F.2d 124, 128-30 (2d Cir. 1992); United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991); United States v. Pena, 930 F.2d 1486, 1494-95 (10th Cir. 1991).

Undersigned counsel is requesting that the Court consider the current circumstances of the Defendant raising four children on her own while her husband Mr. Garcia has abandoned her

and her children.  Ms. Medina's primary concern is the well being and upbringing of her children and she is extremely distraught not knowing who will take care of them is she is sent to prison. She has no confidence that Mr. Garcia will return and provide for his children, and her living relatives are not physically or financially able to care for her children and there is no savings to provide for them.

All four of her children have suffered from depression and anxiety relating to their father's abandonment and due to their mother's plea in this case.  The oldest child, Celena, sought counseling through SALUD, a low-income clinic located in Brighton and was prescribed an anti-depressant.  Brandon saw a counselor through Kaiser while they still had health insurance and has also sought counseling from school and church counselors.  Bethany and Cheyenne have also sought counseling through their church.

Ms. Medina's youngest daughter, Cheyenne, had to have surgery at Children's Hospital on April 20, 2018 for a broken finger.  The surgeon had to set her finger with a pin and that pin will have to be surgically removed in July.  Mr. Garcia was not present for the surgery and did not check on her after the surgery was over.

Ms. Medina's oldest daughter, Celena, has had spells of fainting over the past year.  She was taken by ambulance this spring to the emergency room.  She is currently seeing a cardiologist, Dr. Claudia Benedict at the Heart Center at SCL Community Hospital and is currently wearing a heart monitor for thirty days to determine if she has a heart issue that has caused the fainting.

Both Cheyenne and Bethany have asthma and must carry inhalers.

Celena has been working on getting her GED so that she can go to junior college. Brandon has been attending Belleview Christian School and hopes to return there in the fall for

his junior year.  Bethany and Cheyenne are currently being home schooled and are utilizing the Penn Foster program.

Ms. Medina is very concerned about what will happen to her kids if she is incarcerated. She is worried that they will have to go into foster care and that they would end up being split up.  Her dad and her siblings are not physically able to care for her children.  She doesn't think that Mr. Garcia will step up and be the father that her children need him to be.

As outlined above, this case is not the "ordinary" case in which a sentence of imprisonment will simply cause basic heartache and hardship as usually occurs when a parent is separated from a child.  Indeed, at this point Ms. Medina is the sole provider and caregiver for her four teenage children.

In <u>United States v. Rivera</u>, Steven Breyer, then Chief Judge of the First Circuit Court of Appeals, former U.S. Sentencing Commissioner, and now United States Supreme Court Justice, attempted to clarify a sentencing court's responsibility when considering whether certain factors warrant a departure. Justice Breyer recognized that trial courts are likely to have a more difficult time recognizing their responsibility in determining whether to grant a departure when it comes to those departures that are "ordinarily not relevant" or "discouraged" as opposed to the other types of departures specifically enumerated in the guidelines. <u>Rivera</u>, 994 F.2d at 947-49. Justice Breyer noted that the Sentencing Commission, in considering departures under Part 5H of the Sentencing Guidelines, "recognized that...circumstances could remove a case from the heartland...if they are present in a manner that is unusual or special...." <u>Id</u>. at 948. For example, he posited that "a single mother with family responsibilities...at some point...may transform the 'ordinary' case of such circumstances into a case that is not all ordinary." <u>Id</u>. Justice Breyer noted that some of the circumstances which may be "extraordinary" thereby warranting a departure

from the sentencing guidelines for extraordinary family circumstances in the case of a single mother are whether the offender has a child with handicaps, or no place for children to go, or no money. Id. at 948.

### *Offense and Sentencing Guidelines*

Medina has entered a plea of guilty to one count of tax evasion in violation of 26 U.S.C. §7201 for the tax year 2008.  This charge carries a maximum penalty of five years of imprisonment or a fine of not more than $100,000, or both, and a term of supervised release of not more than 3 years.  It is a Class D felony.

In tax cases, the base offense level is determined by the intended tax loss, which goes beyond the offense that is subject to the plea and includes the tax loss from all related conduct. In this case, the parties have agreed that the tax loss in this case relating to years 2008 through 2011 is $841,327, putting the tax loss in the range of more than $550,000 but less than $1,500,000 for an offense level of 20.  This tax loss is a result of money that the corporation earned and that she used for personal purposes.  She did not file corporate tax returns and did not report this income on her personal income tax returns.

Given that the civil side of the IRS assesses its own penalties, undersigned counsel's position is that a fine should either not be imposed or should be minimal given all of the other amounts that will be assessed against Ms. Medina.

Under the tax table of the sentencing guidelines, the total offense level is a 20.  Medina is also eligible for a 3 point departure for early acceptance of responsibility.    Thus, our calculations result in an offense level of 17 which carries a guideline sentence of 24 to 30 months.

In the event that the Court deems that a prison sentence is warranted and that a period of

home-confinement is not appropriate, Ms. Medina requests that the Court consider a prison sentence that is below the guideline range and consider a sentence of one year and a day. The Defendant would also request that is she is sentenced to prison that the Court recommend that she be sentenced to the FPC Bryan, located at 1100 Ursuline Avenue in Bryan, Texas 77803, which is a minimum-security camp. Ms. Medina's brother has friends who live in that area and thus her family could stay with them if they were able to get to Texas to visit her. Her second choice would be FCI Dublin, located at 5701 8th Street – Camp Parks in Dublin, California 94568, which is a low security federal correctional institution. After investigating possible federal prisons for female offenders, Ms. Medina realizes that these are two of the closest federal prisons to Colorado that are minimum security or low security institutions. These two locations would likely offer the most opportunities for her children to visit. It is obviously troubling that there are no female federal prisons in the state of Colorado and thus her children, if they are able to visit her, will need to travel hundreds of  miles to get there. Finally, Ms. Medina would also request that she be permitted to surrender at the institution designated by the Bureau of Prisons before noon within 15 days of the date of designation and if possible, she would request that the surrender take place in September after she is able to get her children started in school and after their current health issues have hopefully been resolved.

### *Character References*

Medina has significant support from the community. To date, undersigned counsel has received numerous letters from friends, family and Medina's church community. Those letters and a letter from Ms. Medina herself were forwarded to U.S. Probation Officer Paige Meador. Ms. Medina a respected individual in her community for all that she does for her family and

friends.

## **CONCLUSION**

Ms. Medina has no criminal history.  She came forward and took responsibility for her actions and entered into a plea agreement prior to the Government filing a criminal information in this case.  Thus, the Government was able to avoid going through the process of obtaining an indictment through the Grand Jury and was able to avoid preparing for trial.  Ms. Medina has been making payments towards the past tax debts and will only have the ability to pay the remaining balance if she is able to continue to work.  Any term of imprisonment in this case would be detrimental to her and her children.  Her post-offense conduct indicates that she will never commit another tax offense nor has she ever been a danger to society.  A sentence of home confinement and probation would be equally efficient as and less costly than incarceration.  A sentence containing significant community service would also be desirable.  If the Court deems that a prison sentence is warranted, Ms. Medina respectfully asks the Court for a prison sentence of one year and a day or alternatively to a sentence at the low end of the guideline range.

Respectfully submitted this 31st day of May, 2018.

s/Amanda B. Cruser_____
***Amanda B. Cruser***
Boog & Cruser, P.C.
3333 S. Wadsworth Blvd., D-201
Lakewood, CO 80227
Phone:  (303) 986-5769
Fax:  (303) 985-3297
abcruser@vfblaw.com
Attorney for the Defendant

CERTIFICATE OF SERVICE

I hereby certify that on May 31. 2108, I electronically filed the forgoing **DEFENDANT MICHELLE MEDINA'S SENTENCING MEMORANDUM AND MOTION FOR A VARIANT SENTENCE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record:

Kathleen Barry, Assistant U.S. Attorney
Kathleen.M.Barry@usdoj.gov


Paige J. Meador, U.S. Probation Officer

s/Amanda B. Cruser_____
***Amanda B. Cruser***